IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICARDO NOBLE,       Plaintiff | : : : | CIVIL NO. 3:CV-05-2609 |
| | : | (Judge Munley) |
| v. | : : | |
| JEFFREY BEARD, et al.,       Defendants | : : | |

## MEMORANDUM

Presently before the court is defendants' motion for summary judgment. (Doc. 26). For the reasons set forth below, the motion will be granted. Also pending is defendants' motion for leave to amend their answer. (Doc. 48). This motion will also be granted.

## I. Statement of Facts

At all times relevant, plaintiff was incarcerated at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"). Plaintiff alleges that from October 29, 2003, through May 3, 2005, while he was housed in the Restricted Housing Unit ("RHU") at the State Correctional Institution at Huntingdon, defendants "regularly, intentionally, maliciously and discriminatorily [sic]" refused to give him Alternate Protein ("AP") or vegetarian meals. (Doc. 1, p. 5). He also alleges that he was given pork despite the fact that "defendants were aware at all times of plaintiff's sincere belief system in regards to not eating pork." (Doc. 1, p. 6).

Plaintiff is a "lacto-ovo-vegetarian (meaning I don't eat meat, chicken, turkey, fish, etc. but I eat eggs and dairy products)" who receives an AP meal. (Doc. 27-2, p. 33).

According to the Clinical Dietician for the Food Service Division, a registered dietitian, licensed by the Commonwealth of Pennsylvania "[a]n Alternate Protein meal is one in which a non-meat entree is substituted for the meat main entree." (Doc. 27-2, p. 52, ¶ 3). Inmates have a choice of receiving an AP meal. (Id.) if they choose such a meal, an AP sign is placed on their cell door. (Doc. 46, p. 3, ¶ 9). The dietician found the following when she evaluated the Master Menu for the Pennsylvania Department of Corrections for nutritional adequacy:

> The Master Menu, as written, incorporating the Alternate Protein entree, when served the standard portion sizes meets the current Recommended Dietary Allowances and Dietary Reference Intakes, Males and Females, 18 to 50 years of age, as identified by the Food and Nutrition Board of the National Research Council. Serving the equivalent of the High Calorie, High Protein snack bag in addition to the Master Menu meets the current Recommended Dietary Allowance and Dietary Reference Intakes for Males and Females, 12 to 18 years of age.
>
> Accordingly, the Alternate Protein meals received by Ricardo Noble were nutritionally adequate.

(Doc. 27-2, p. 52, ¶¶ 5-6).

Plaintiff has utilized the Pennsylvania Department of Corrections' ("DOC") grievance system, which provides inmates access to a formal procedure through which the resolution of problems or other issues of concern arising during the course of confinement may be sought, to address concerns about his diet. The Administrative Directive (DC-ADM) in effect at the time provided for the following three stages of review: Initial Review, which addresses the inmate's filed grievance at the institutional level, DC-ADM-804 Part VI.B; appeal from the

initial review known as the Appeal to Facility Manager, DC-ADM-804 Part VI C; and the final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), DC-ADM-804 Part VI.D.[1] (Doc. 27-2, pp. 54-67, 68-82).

Plaintiff filed Grievance No. 74651 in January 2004, and Grievance No. 99522 in October 2004, complaining about the removal of AP tags from the food trays and the lack of protein provided in the diet. Neither grievance was pursued beyond the initial review response received from the grievance officer. (Doc. 27-2, pp. 33-36).

On December 20, 2004, he filed Grievance No. 105139, wherein he takes issue with the fact that the Restricted Housing Unit ("RHU") G-Block Officers on the 6 a.m. to 2 p.m. shift "occasionally" refused to give him an AP food tray, removed the AP tabs from food, and tried to trick him into eating regular meals. (Doc. 27-2, p. 14). He also takes issue with the fact that he was served pork on one of his AP trays. In denying the grievance, the grievance officer informed plaintiff that "[o]fficers are instructed by policy to remove all tags from the serving trays before they are placed into the feeding apertures. This is done at the cell door. The officers on the unit are aware of those inmates that are to receive an AP tray." (Doc. 27-2, p. 15). On appeal, the Superintendent agreed with the grievance officer. (Id. at p. 18). On final review, the Chief Grievance Officer upheld the responses at the institutional level by stating that "[t]he officer's [sic] in the RHU are required to remove the "Alternate

---

[1] "Although 804 has been re-issued over time with different effective dates, in all versions 804 has retained a three-step process for the review of administrative grievances filed under it." (Doc. 27-2, p. 5,¶ 3).

Protein" tags from the serving trays before they pass them into the cells." (Id. at p. 20). "The responses provided at the institutional level are appropriate and in accordance with Department of Corrections' policies and procedures." (Id.)

Plaintiff filed Grievance No. 111307 on March 8, 2005, complaining that simply serving cheese pizza without a protein supplement does not satisfy the AP diet. (Doc. 27-2, p. 21). He argues that the practice of not providing AP trays with an adequate protein supplement is malicious and discriminatory and in violation of DOC policy and the 8th and 14th Amendments to the United States Constitution. (Id.) In response, plaintiff was advised of the following:

> All the meals prepared here at SCI-Huntingdon are made according to the DOC Master Menu. The Master Menu is both evaluated and approved by the State Dietitian. When served the standard portion amounts of all items on the menu, including choosing between the main entree and the alternate protein entree, this menu meets the current recommended dietary allowances and dietary reference intakes as prescribed by the Food and Nutrition Board of the National Research Council.
>
> In accordance with the Master Menu for the hamburger cheese pizza meal, the alternate protein is cheese pizza. The same holds true for the grilled ham and cheese sandwich meal. The alternate protein for the meal is a grilled cheese sandwich.
>
> [N]o DOC policies nor any of your U.S. Constitutional rights have been violated.

(Doc. 27-2, p. 22). Plaintiff's appeal was also denied. (Id. at pp. 23-24). Plaintiff appealed the grievance to final review. (Id. at p. 25). The Chief Grievance upheld the responses finding that the proper alternate protein meals are served. (Id. at p. 26).

Prior to resolution of the above grievance, Plaintiff filed a third grievance, Grievance No. 115668, complaining that he found a "significant amount of turkey pieces in [his] AP (tofu) entree. . . ." (Doc. 27-2, p. 27). He claims that because he was deprived an AP meal, he was unable to eat. The Grievance Officer responded by informing him that the regular meal, turkey tetrazzini and the AP meal, tofu tetrazzini, looked similar. However, the main AP trays sent to the RHU are clearly marked and kept separate from the regular trays and there should be no mix-up. (Doc. 27-2, p. 28). He was unsuccessful on appeal. (Id. at pp. 30, 32). During final review, it was concluded that he failed to demonstrate that his meal contained turkey rather than tofu. (Id.)

Plaintiff contends that Grievance Nos. 111307 and 115668 are irrelevant to this action. (Doc. 46, p. 6, ¶ 21).

According to the Administrative Officer in the SOIGA, responsible for receiving and processing all grievances appealed to final review, there is no record of a grievance "related to a 'sincerely held religious belief with regard to food' or an allegation that Noble had not received a meal at all from October 29, 2003 through May 3, 2005," while housed in the RHU. (Doc. 27-2, p. 4, ¶ 2; p. 13, ¶ 38).

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the burden of proving that there is no genuine issue of material fact. Id. Additionally, on summary judgment, the inferences to be drawn from the underlying facts must be viewed in a light most favorable to the non-moving party. El v. S.E. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To preclude summary judgment, there must be a "genuine" issue of a material fact, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-250 (internal citations omitted).

Moreover, Rule 56 provides that the adverse party may not simply sit back and rest on the allegations contained in the pleadings. Fed. R. Civ. P. 56(e). Rather, the adverse party must show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that there is a genuine issue for trial. Id. When addressing a summary judgment motion, the court's inquiry focuses on "whether *the evidence* presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52 (emphasis added).

### III. Discussion

    A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) requires prisoners to present each of their claims through an administrative grievance process before seeking redress in federal court. The act specifically provides as follow:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). Prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. See Porter v. Nussle, 534 U.S. 516, 532 (2002): Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)(quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998).

The standard by which to measure whether a prisoner has exhausted his administrative remedies is whether he has complied with the grievance procedures and rules. Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. Spruill, 372 F.3d at 227-32; see also Nyhuis, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. Spruill, 372 F.3d at 227-32; see also Camp v. Brennan, 219 F.3d 279.

Review of the grievances submitted by plaintiff reveals that he has failed to exhaust his First Amendment claim that defendants served him pork even though they were aware of his beliefs in regards to not eating pork. He has also failed to exhaust the claim that he was denied food altogether. Defendants' motion will be granted with respect to these claims. However, as plaintiff has exhausted the issue of the adequacy of his diet, the Court will proceed to the merits of that claim.

B. Adequacy of Plaintiff's Diet

Although the Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, Helling v. McKinney, 509 U.S. 25, 32, (1993), it does not mandate that prisons be free of discomfort. Hudson v. McMillian, 503 U.S. 1, 9 (1992). "No static test determines whether conditions of confinement are 'cruel and unusual.' These terms must 'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society.'" Tillery v. Owens, 719 F. Supp. 1256, 1262 (W.D. Pa. 1989)(citing, Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). Conditions that are not cruel and unusual under contemporary standards are constitutional. Rhodes, 452 U.S. at 348.

To sustain an Eighth Amendment claim, the inmate must also show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Specifically, an inmate must prove that the defendant demonstrated "deliberate indifference" to a serious risk of harm to

which the inmate was exposed. Farmer v. Brennan, 511 U.S. 825, 836-37 (1994); see also Ostrander v. Horn, 145 F. Supp. 2d 614, 620 (M.D.Pa. 2001), aff'd, 49 Fed. Appx. 391 (3d Cir. 2002). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "The question . . . is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" Farmer, 511 U.S. at 843.

Prisoners are entitled to a nutritionally adequate diet. Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980). The Eighth Amendment requires that prison officials serve "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Ramos, 639 F.2d at 571. "A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment." Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002).

The undisputed facts show that the meals provided to inmates at SCI-Huntingdon, are prepared according to Master Menus. Each meal, which includes a protein alternative, is certified by a Dietitian to meet the current Recommended Dietary Allowances and Dietary Reference Intakes for males and females identified by the Food and Nutrition Board of the National Research Council. Plaintiff's choice to forgo the different meal opportunities available to him does not render his conditions of confinement, specifically his diet, constitutionally inadequate. His claim that he was purposefully given a nutritionally

inadequate diet is speculative at best. There is no evidence that he was, in fact, served with regular food trays as opposed to AP food trays. However, even if that were the case, it is not enough for a prisoner to allege that his food or food portions were inadequate. He must establish that he was exposed to a serious risk of harm. For instance, there must be more in the way of evidence of the impact of a prolonged deficient diet. No substantiation of Plaintiff's claim has been presented. As noted *supra*, a party opposing a motion for summary judgment must adduce more than a scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. See Celotex, 477 U.S. at 325; Anderson, 477 U.S. at 249-50. The Plaintiff has failed to meet his burden. Given these circumstances, defendants are entitled to judgment in their favor on this claim.

C. Harassment

In order to prevail on a § 1983 claim, a plaintiff must establish that: (1) the alleged wrongful conduct was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000); Schiazza v. Zoning Hearing Bd., 168 F. Supp.2d 361, 372 (M.D. Pa. 2001).

It is well-settled that verbal harassment does not amount to a constitutional violation. Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973) (overruled on other grounds); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ( "Mean harassment . . . is insufficient to state a

constitutional deprivation." ); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ( "verbal harassment does not give rise to a constitutional violation enforceable under § 1983" ); Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D.Pa.) ("Verbal abuse is not a civil rights violation. . . ." ), aff'd , 800 F.2d 1130 (3d Cir. 1986) (Table); Carter v. Cuyler, 415 F. Supp. 852, 856 (D.C. Pa. 1976). Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (concerning a guard who put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife).

Inasmuch as plaintiff contends that defendants' conduct (Doc. 1, p. 5), amounted to harassment, such a claim is a far cry from a cognizable harassment claim involving physical threats or egregious acts designed to reenforce the harassment. Clearly, defendants are entitled to an entry of summary judgment on the harassment claim.

## IV. Motion to Amend Answer

Defendants seek to amend paragraphs 4 and 5 of their answer to correct shift information with regards to defendants Juarez and Rivello. (Doc. 49, p. 3). FED. R. CIV. P. 15(a) provides that a party may amend a pleading by leave of court and that leave shall be freely given. In light of defendants' representation that the amendment "does not have an effect on any of the material facts in this matter . . . " and, because the amendment will not prejudice plaintiff, the motion will be granted.

## V. Conclusion

Based on the foregoing, defendants' motion for summary judgment (Doc. 26) will be granted. In addition, defendants' motion to amend the answer (Doc. 48) will be granted.

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court

Dated: September 28th 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICARDO NOBLE,** | : | CIVIL NO. 3:CV-05-2609 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **JEFFREY BEARD, et al.,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

AND NOW, to wit, this 28th day of September 2007, it is hereby **ORDERED** that:

1. Defendants' motion for summary judgment (Doc. 26) is GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff.

3. Defendants' motion to amend their answer (Doc. 48) is GRANTED.

4. The Clerk of Court is further directed to CLOSE this case.

5. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court